AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
Western District of Virginia

CLERKS OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

JAN 16 2020

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Alejandro ESCARCEGA-Avila | ) |
| | ) |
| | ) |
| | ) |
| | ) |

Case No.  *4:20-MJ-5*

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___January 2015 to October 2019___ in the county of ___Henry___ in the
___Western___ District of ___Virginia___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sec. 1956(h) | Conspiracy to Commit Money Laundering |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_Christopher Young_
_Complainant's signature_

Christopher Young, DEA Task Force Officer
_Printed name and title_

Sworn to before me and signed in my presence.

Date:  _January 16, 2020_

_Robert S. Ballou_
_Judge's signature_

City and state:  ___Roanoke, VA___

The Honorable Robert S. Ballou
_Printed name and title_

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

UNITED STATES OF AMERICA

v.

ALEJANDRO ESCARCEGA-AVILA

SEALED

No: 4: 20-mJ-5

AFFIDAVIT IN SUPPORT OF A
CRIMINAL COMPLAINT AND ARREST WARRANT

I, Christopher N. Young, being first duly sworn, hereby depose and state as follows:

1.      I have been a Task Force Officer with the United States Drug Enforcement Administration (DEA) since October, 2008.  I am currently assigned to Enforcement Group 25, Roanoke Resident Office (RRO), of the DEA Washington Division Office and have been employed by the Henry County Sheriff's Office for over 19 years. I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code, and am empowered by law to conduct investigations of, and to make arrests for, offenses in violation of Title 18 and Title 21 of the United States Code.

2.      I have received training in all areas of narcotics investigations including search and seizure laws and statutes pertaining to enforcement of the Controlled Substances Act.  Since becoming a DEA Task Force Officer in 2008, I have either conducted or assisted other law enforcement officers in conducting numerous narcotics investigations that have resulted in the arrest and conviction of numerous individuals.  I have participated in a number of drug trafficking, money laundering, and organized crime investigations that have resulted in the arrest

1

of numerous members of several different international and domestic drug trafficking organizations and the seizure of currency, assets, and drugs.  I have participated in many searches of residences and businesses of suspected drug traffickers for evidence of criminal activity.  I have also conducted and participated in the debriefing of many drug traffickers and money launderers, through which I have learned valuable information regarding the techniques used by drug trafficking organizations to distribute drugs in both domestic and international markets.  As a result of my training and experience, I am familiar with the way in which drug trafficking organizations illegally traffic, transport, and distribute drugs and launder the proceeds derived from their drug distribution activity.

3.      The facts in this affidavit come from my training and experience as well as information obtained from other law enforcement officers and interviews with witnesses.  All observations I did not personally make were relayed to me by the individuals who made them, or come from my review of records, documents, and other physical evidence obtained during the course of this investigation.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      This affidavit is submitted in support of a criminal complaint and an arrest warrant charging **Alejandro ESCARCEGA-Avila** with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).

## PROBABLE CAUSE

5.      During the course of the investigation beginning in March 2015, DEA RRO, HSI Roanoke Office, and Henry County, Virginia, Sheriff's Office (HCSO), determined that a large-scale, Mexican-based, DTO/MLO was operating from Axton, Virginia, and Greensboro, North

2

Carolina. This investigation revealed that the international DTO/MLO used stash house locations in Axton, Virginia, to move large quantities of drugs through the mid-Atlantic and eastern half of the United States. The individuals operating in Axton and Greensboro reported directly to, and received direction and instruction from, members of the Cartel Jalisco Nueva Generacion (CJNG) criminal organization in Mexico.[1]

6.      In June 2016, DEA RRO was contacted by the DEA Dallas Field Division (DEA DFD) about a tractor trailer that arrived in Dallas, Texas, to pick up a large piece of equipment. Based on their independent investigation into drug trafficking activity, the DEA DFD suspected the equipment contained a large amount of cocaine that was destined for the Martinsville, Virginia, area. Agents with DEA DFD approached the truck driver, who provided a bill of lading showing an address to a business in Martinsville.

7.      Approximately three days later, DEA RRO conducted surveillance in the area of the business and observed the tractor trailer arrive at the business at approximately 6:50 am. A short time later, an unidentified Hispanic male ("UM 1") arrived at the business in a black 2016 Ford Fiesta rental car, North Carolina registration EBW-4429, and removed the equipment from

---

[1] Based on my training, experience, and the information gathered from federal law enforcement agencies investigating this organization in Mexico and the United States, and the information determined in other investigations in the DEA RRO, I know that CJNG is a Mexican-based criminal organization controlling the large majority of cocaine, heroin, and methamphetamine trafficking in southern and western Mexico. Based originally in Guadalajara, Jalisco, Mexico, CJNG has recruited individuals from the regions of Jalisco, Nayarit, and Veracruz to transport drugs across the Mexican border and to distribute drugs in areas of the Western District of Virginia, including Axton, Virginia, and Winchester, Virginia. Once in Axton, CJNG members and their associates maintained several residential properties for the purpose of receiving, storing, packaging, and distributing multiple kilograms of cocaine, multiple kilograms of heroin, and multiple pounds of marijuana they further distributed. Those CJNG members and associates received large amounts of United States currency as payment for the controlled substances, and transmitted that currency to members and affiliates of CJNG based in Mexico, frequently laundering the money through wire transfers and bank accounts, and often transferring bulk cash to coconspirators engaged in money laundering activities.

the trailer. UM 1 stayed a very short time and briefly left the business in the Ford Fiesta. UM 1 returned to the business and drove the equipment into a warehouse building.  Subsequently, UM 1 and another unidentified Hispanic male ("UM 2") left the business in the Ford Fiesta and drove repeatedly back and forth in front of the business, conducting what appeared to be counter-surveillance.  A short time later, UM 1 and UM 2 met with the driver of a blue mini-van, Virginia registration VMD-3980, later determined to be **ESCARCEGA-Avila**. Surveillance units observed **ESCARCEGA-Avila** enter the Ford Fiesta with UM 1 and UM 2, and all three subjects left the area. For approximately 20 minutes, the three subjects drove repeatedly back and forth in front of the business, again conducting what appeared to be counter-surveillance.  All three subjects then got in **ESCARCEGA-Avila**'s blue van, and drove in the same manner in front of the business, conducting what appeared to be additional counter-surveillance.

8.      Later in the afternoon, law enforcement surveillance observed a silver Toyota arrive at the business where the equipment was delivered, followed by the black Ford Fiesta. After approximately three hours, the silver Toyota and black Ford Fiesta left the business. A traffic stop was conducted on the silver Toyota. A narcotics K-9 was utilized to conduct a free air sniff around the silver Toyota, which had a positive alert for the presence of narcotics. Law enforcement searched the vehicle but did not locate any drugs.

9.      On February 1, 2018, law enforcement conducting an investigation into the same international DTO/MLO executed a total of seven (7) search warrants on residential locations in and around Axton, Virginia, and one vehicle stop after an intercepted communication indicated that the driver had picked up a delivery of cocaine from his sources of supply, Jose Alfredo SANTACRUZ-Godinez and Rogelio SANTACRUZ-Godinez.  As a result of these law enforcement actions that day, investigators recovered 11 kilograms of cocaine, 5 pounds of

4

marijuana, 10 different firearms, and over $100,000 of US Currency. Both Jose Alfredo SANTACRUZ-Godinez and Rogelio SANTACRUZ-Godinez were charged with a federal drug trafficking conspiracy, and Jose Alfredo SANTACRUZ-Godinez was later charged with a federal money laundering conspiracy.

10.     On July 11, 2018, DEA RRO and Virginia State Police executed a state search warrant at a residence in Martinsville, Virginia, following the controlled delivery of approximately 15 pounds of marijuana that had been intercepted by the Virginia State Police while scanning packages for drugs.[2]  During the search, law enforcement observed a money counting machine, a drug ledger detailing more than $4,000,000 in cocaine transactions, and some firearms.  Francisco ALVAREZ-Consuelo was present at the residence during the state search warrant, and had a user amount of marijuana in his pocket.[3]

11.     Several months later, in 2018, DEA RRO received information from a confidential source of information (CS 1) that members of the international DTO/MLO had provided CS 1 with the names of individuals who were to receive large quantities of cocaine and marijuana from CS 1 for further distribution.  ALVAREZ-Consuelo and Meliton ROSALES-Alvarez were two of those individuals, and CS 1 identified both as drug associates working with

---

[2] The package was initially delivered to 1711 Plantation Drive, Axton, Virginia, where it was picked up, driven directly to the Martinsville address, and carried inside.  The package was delivered to the same residential address in Axton, Virginia, that was used on March 8, 2015, as a stash location for 5 kilograms of cocaine recovered by law enforcement, along with wire transfer documents, digital scales, and drug packaging material.  That same address appeared as the delivery location for a commercial delivery of 478 grams of methamphetamine on April 8, 2016, which was subsequently intercepted by law enforcement.

[3] Cesar GONZALEZ-Parra owned the Martinsville home, and was present during the search.  GONZALEZ-Parra and Jose Alfredo SANTACRUZ-Godinez had been present during a September 2015 meeting with an undercover agent with HSI in Richmond, Virginia, in which GONZALEZ-Parra and SANTACRUZ-Godinez were negotiating the transfer of 20 kilograms of cocaine.

**ESCARCEGA-Avila**.  As a result of the direction received by members of the international DTO/MLO operating in Mexico, CS 1 distributed approximately 20 kilograms of cocaine to ALVAREZ-Consuelo, and approximately six (6) kilograms of cocaine to ROSALES-Alvarez.

12.     In September 2018, law enforcement conducted a traffic stop involving Ana Bella SANCHEZ-Rios, after observing her driving a vehicle that picked up a controlled delivery of 20 pounds of marijuana from a suspected stash house for the international DTO/MLO.  At that time, SANCHEZ-Rios was the owner and operator of a money service business in Axton, Virginia, that CS 1 later identified as a point of money laundering for drug proceeds for the international DTO/MLO.  Investigators conducted an extensive examination of the international wire transfers sent from SANCHEZ-Rios's business to Ixtlan del Rio, Nayarit, Mexico.  Based on that extensive investigation, law enforcement identified more than $4,000,000 in drug trafficking proceeds laundered by wire transfers on behalf of this DTO/MLO over a period of 16 months. Law enforcement recovered explicit communications between a member of the international DTO/MLO operating in Mexico and SANCHEZ-Rios, directing SANCHEZ-Rios to send money delivered to her in cash to specific recipients in Mexico during that time, and to structure the transfers in an effort to avoid law enforcement detection.  These transactions were sent in the names of several different individuals, and were sent to several different individuals in Ixtlan del Rio.  Several other members of the international DTO/MLO, including **ESCARCEGA-Avila**, transferred money using SANCHEZ-Rios's business to Ixtlan del Rio.

13.     Additionally, during an examination of the cellular device belonging to SANCHEZ-Rios during the September 2018 traffic stop, law enforcement identified explicit communications between a phone number subscribed to an individual living at 1738 Morgan Ford Road, Ridgeway, Virginia, and SANCHEZ-Rios, directing SANCHEZ-Rios to send money

delivered to her in cash to specific recipients in Mexico and California. Law enforcement believes that **ESCARCEGA-Avila** was using that number at that time.

14.     In 2019, agents with DEA 1, DEA 2, DEA 3, and DEA 4 developed two confidential sources (CS) with information pertaining to money laundering operations on behalf of CJNG. Specifically, each CS received a contract to perform money laundering services on behalf of CJNG, and the contract involved a specific money transaction or series of money transactions spread across the United States. In their capacity working under this contract, each CS would receive information from a member of CJNG that there was bulk cash ready for pick up, each CS would arrange for a courier to pick up the currency from a member or associate of CJNG, and each CS would ensure that bulk cash was laundered in the specific way identified by CJNG for those proceeds.

15.     For months, DEA 1, DEA 2, and DEA 3 each used their respective CS ("DEA 1 CS," "DEA 2 CS," and "DEA 3 CS") successfully to retrieve drug proceeds in other judicial districts with ongoing investigations of CJNG's drug trafficking and money laundering activity. Through these and through investigations in their own districts, DEA 1, DEA 2, and DEA 3 have identified individuals responsible for ordering their respective CS to collect and launder drug proceeds on behalf of CJNG.

*Controlled Bulk Cash Delivery: March 21, 2019*

16.     In March 2019, DEA 1 CS provided DEA 1 with information indicating that a transfer of drug proceeds was scheduled to occur in Axton, Virginia. DEA 1 CS provided DEA 1 with (434) 857-6954 as the contact person to drop off the U.S. Currency. DEA RRO issued an Administrative Subpoena to Verizon Wireless for subscriber and toll records associated with

(434) 857-6954, and subsequently determined the number was subscribed to Aiden Hdz, 1162 Piney Forest Road, Danville, Virginia.[4]

17.     Subsequently, DEA 1 obtained a state tracking warrant (ping) for (434) 857-6954 and observed the operator of the device bearing that cellular telephone number continuously show in the area of Ridgeway, Virginia, which is located in Henry County in the Western District of Virginia.  Based on previous information received by DEA RRO, the ping was in the same general area as the residence associated with **ESCARCEGA-Avila**.  DEA RRO requested assistance from HCSO to attempt to identify vehicles at the residence, using a ruse to conceal their approach.  Law enforcement officers observed vehicles parked at the residence, at 1738 Morgan Ford Road, Ridgeway, Virginia, including a 2007 blue Honda van with Virginia registration VMD-3980, which was the same vehicle observed during surveillance of the suspected drug delivery in June 2016.  During the interaction with the HCSO deputy at the residence in March 2019, the deputy's body worn camera captured the conversation with a Hispanic male, later positively identified by agents in this investigation reviewing the footage as **ESCARCEGA-Avila**.  The ping for (434) 857-6954 remained at the residence overnight, and agents conducting surveillance near the residence did not see the vehicle leave the residence during that time.

18.     On the following day, the ping on (434) 857-6954 appeared in the area of Axton, Virginia. DEA RRO travelled around the area of the ping and located a blue Honda van, believed to be the same vehicle observed at the Ridgeway residence associated with **ESCARCEGA-**

---

[4] A search of law enforcement databases does not show the name of Aiden Hdz residing at the subscriber address or even existing in Virginia.

Avila and from the previous surveillance operation in June 2016.[5]  On this day, that blue Honda

van was at an address associated with ALVAREZ-Consuelo and his brother, Meliton

ROSALES-Alvarez.

19.    During the investigation, DEA RRO provided undercover/confidential source

assistance, using a confidential source (CS 2), to arrange for the pick-up of approximately

$300,000 in drug proceeds.  On March 21, 2019, CS 2 contacted (434) 857-6954 and arranged

for the transfer of drug proceeds for a location in Axton, Virginia. At approximately 5:03 p.m.,

CS 2 received a telephone call from a male, believed to be **ESCARCEGA-Avila**, from (434)

857-6954.  **ESCARCEGA-Avila** told CS 2 that he would be sending someone else to deliver the

U.S. Currency.

20.    Surveillance teams were in place to observe the transaction, and saw

**ESCARCEGA-Avila** and ALVAREZ-Consuelo traveling in tandem, but in separate vehicles, to

the designated transaction location.  **ESCARCEGA-Avila** was driving the same blue Honda van

observed at his residence in Ridgeway the previous day, and believed to be observed at the

residence of ALVAREZ-Consuelo.  ALVAREZ-Consuelo was driving a burgundy and silver

Dodge truck registered in his own name.  Once at the transaction location, a male, identified by

law enforcement officers as ALVAREZ-Consuelo,[6] exited his vehicle and obtained a green bag

from the truck he was driving.  Law enforcement later determined the green bag contained

approximately $300,320 U.S. Currency.  ALVAREZ-Consuelo gave the green bag to CS 2, who

---

[5] DEA RRO was unable to confirm the license plate on the blue Honda van due to the distance
the van was parked from the street.

[6] A review of a covert video recording of the transaction allowed agents to positively identify
ALVAREZ-Consuelo as the individual who handed the green bag to CS 2.  CS 2 also positively
identified a photograph of ALVAREZ-Consuelo as the individual who gave CS 2 the green bag.

placed it in the trunk of CS 2's vehicle. Approximately two minutes after CS 2 left the

designated location, **ESCARCEGA-Avila** arrived at the transaction location in his blue Honda

van and appeared to meet with ALVAREZ-Consuelo.

*Controlled Bulk Cash Delivery: July 17, 2019*

21.     During the investigation, the DEA RRO provided assistance to DEA 2 for a

transfer of drug trafficking proceeds set to occur in Axton, Virginia, on behalf of the same

international DTO/MLO involved in this case.  DEA 2 CS received a contract to launder money

for CJNG and was given the telephone number of the contact person for the bulk cash transfer,

an unknown individual using (434) 857-6409.

22.     On July 17, 2019, CS 2 contacted (434) 857-6409 and arranged for the transfer of

drug proceeds for a location in Axton, Virginia.  At approximately 2:12 p.m., CS 2 received a

telephone call from a male, believed to be **ESCARCEGA-Avila**,[7] from (434) 857-6409.

**ESCARCEGA-Avila** told CS 2 that he would be sending someone else to deliver the U.S.

Currency.  CS 2 received a text message from **ESCARCEGA-Avila**, instructing CS 2 to meet at

11170 Chatham Road, Axton, Virginia, which is the address of a dollar store.[8]

---

[7] DEA RRO determined that **ESCARCEGA-Avila** was utilizing (434) 857-6409 at that time based on a Federal tracking warrant that was received on August 8, 2019, from U.S. Magistrate Judge Joel C. Hoppe, in Charlottesville, Virginia.  That tracking warrant showed that (434) 857-6409 was mostly located in the same area of **ESCARCEGA-Avila**'s residence, previously identified by the ruse call conducted by the HCSO deputy in March 2019.  (434) 857-6409 was also "pinging" in the same area of the telephone number used by **ESCARCEGA-Avila** to coordinate the drug proceeds transfer in March 2019.  Furthermore, the tracking warrant showed that (434) 857-6409 traveled to the area of the shared residence of ALVAREZ-Consuelo and ROSALES-Alvarez residence on several occasions, similarly to the movements of **ESCARCEGA-Avila** during prior money transactions.

[8] Based on information gained during this investigation, this DTO/MLO had previously made exchanges of bulk cash from drug trafficking proceeds at a dollar store in Axton, Virginia.

23.     Following the telephone calls between (434) 857-6409 and CS 2, telephone toll analysis shows that (434) 857-6409 called (276) 403-2134.  After obtaining a federal tracking warrant for location information for telephone number (276) 403-2134, law enforcement concluded that ALVAREZ-Consuelo was using (276) 403-2134, based on surveillance confirming the locations returned through warrant.[9]

24.     Based on previous money pickups in the same area, DEA RRO set up surveillance in the area of 290 and 324 Haislip Lane, Axton, Virginia.  The DEA RRO observed a 1990 red Toyota vehicle[10] leave 290 Haislip Lane, drive to the Axton Dollar General store, and sit in the parking lot for several minutes.  The 1990 red Toyota left the Dollar General parking lot and drove back to 290 Haislip Lane.  Based on my training and experience, I believe the individual driving the 1990 red Toyota drove to the Dollar General parking lot to determine whether there was a law enforcement presence in the area prior to the transaction.

25.     At approximately 2:51 p.m., CS 2 received an incoming telephone call from **ESCARCEGA-Avila** on (434) 857-6409.  **ESCARCEGA-Avila** stated, "what kind of car are you in." CS 2 responded with the description of his/her vehicle. **ESCARCEGA-Avila**

---

[9] Law enforcement confirmed the location information received on this phone was pinging regularly in the location of ALVAREZ-Consuelo's shared residence with ROSALES-Alvarez. On or about August 13, 2019, the location information provided during the operation of the tracking warrant on (276) 403-2134 appeared a specific location in the area of Martinsville, namely a residence in Collinsville, Virginia. On that occasion, DEA RRO contacted HCSO to conduct surveillance to further confirm the individual operating (276) 403-2134 at that time in Collinsville, Virginia.  HCSO observed a Dodge truck, registered to ALVAREZ-Consuelo and seen being operated by ALVAREZ-Consuelo, at the specific residential location identified by the tracking warrant for the number.  This truck was the only vehicle located at the residence on that occasion, and was the same truck observed by law enforcement during the March 2019 delivery of bulk cash made by ALVAREZ-Consuelo.

[10] The registered owner of this vehicle was Carla ALVAREZ, a relative of ALVAREZ-Consuelo and ROSALES-Alvarez.

11

responded, "give the code/key to the guy to confirm it's the right number."[11] **ESCARCEGA-Avila** asked CS 2 to call when he/she was at the location, told CS 2 to look for "a little Toyota," and advised he would "call him. He should be close to you."

26.     Surveillance teams observed CS 2 and a blue Toyota pickup arrive at the Dollar General parking lot within minutes of each other.  CS 2 exited his/her vehicle and met with the driver of the blue Toyota pickup truck.  CS 2 walked around to the driver's side of the bed of the truck and retrieved an animal feed bag that contained $99,985 in drug proceeds.  Surveillance teams observed the blue Toyota pickup truck pull into 324 Haislip Lane, Axton, Virginia after leaving the Dollar General store.  Surveillance teams identified Meliton ROSALES-Alvarez as the driver and only occupant of the blue Toyota pickup truck.  CS 2 positively identified a photograph of Meliton ROSALES-Alvarez as the delivery driver of the money drop off.

*Controlled Bulk Cash Delivery: October 8, 2019*

27.     In October 2019, DEA 3 CS provided DEA 3 with information indicating that a transfer of approximately $1,200,000 in drug trafficking proceeds from the international DTO/MLO was to occur in the Axton, Virginia, area.  DEA 3 CS received a contract to launder money for CJNG and was given (434) 857-6409 as the individual to contact to coordinate the transfer.

28.     On October 8, 2019, **ESCARCEGA-Avila** contacted an undercover agent for DEA 3 ("DEA 3 UC") using (434) 857-6409 to arrange the details of the money transfer. **ESCARCEGA-Avila** instructed DEA 3 UC to meet at the Dollar General store, located at 11170 Chatham Road, Axton, Virginia.  That address is the same location for the money transfer in July

---

[11] The individuals operating the international DTO/MLO that had contacted DEA 3 CS to arrange for the money transfer provided him/her with a specific serial number from a one dollar bill in U.S. Currency.  That serial number was to be used during the money transfer.

2019, and is the address for the Dollar General store. DEA 3 UC and a confidential source ("CS 3") drove to the Dollar General and waited on the delivery of drug proceeds. At approximately 6:37 p.m., a Hispanic male driving an older blue Toyota truck, known to be Meliton ROSALES-Alvarez, arrived at Dollar General and walked inside. ROSALES-Alvarez approached DEA 3 UC inside the Dollar General and DEA 3 UC directed ROSALES-Alvarez to speak with CS 3, who was still in the vehicle. ROSALES-Alvarez asked the CS 3 to follow him to a different location to conduct the transaction, but CS 3 declined to leave that location. ROSALES-Alvarez returned to the Blue Toyota pickup and was observed on his cellular telephone. At approximately 6:50 p.m., DEA 3 UC observed a white Toyota Tundra arrive at the Dollar General and park beside the UC vehicle. An unidentified Hispanic male exited the white Toyota and ROSALES-Alvarez approached CS 3 in the UC vehicle. CS 3 obtained a large black suitcase and a smaller black shoulder bag containing the drug proceeds from the unidentified Hispanic male and ROSALES-Alvarez.

29.     Agents searched the two bags and observed several vacuum-sealed bags of USC with writing on them. The USC was transported to DEA RRO for processing. The USC bundles were numbered 1 through 56 and each contained approximately $20,000 USC. Law enforcement later determined the suitcase and shoulder bag contained $1,121,854 U.S. Currency.

30.     Following the money transfer, **ESCARCEGA-Avila** made a series of outgoing telephone calls from (434) 857-6409 to DEA 3 UC requesting the "code" that was supposed to be given to the courier following the receipt of the US Currency. The courier, ROSALES-Alvarez, had neglected to get the code first. DEA 3 UC sent **ESCARCEGA-Avila** a photograph of the "code" via **ESCARCEGA-Avila**'s WhatsApp encrypted account, which is linked directly to the number (434) 857-6409.

13



## CONCLUSION

31.     Based on the aforementioned, there is probable cause to believe that, starting at an unknown date but no later than March 2019 and October 2019, in the Western District of Virginia and elsewhere, **Alejandro ESCARCEGA-Avila**, Francisco ALVAREZ-Consuelo, and Meliton ROSALES-Alvarez, knowingly conspired with each other, and others, to commit offenses against the United States in violation of 18 U.S.C. § 1956, specifically:

a.      to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is conspiracy to commit drug trafficking and drug trafficking in violation of 21 U.S.C. §§ 841(a) and 846, with the intent to promote the carrying on of specified unlawful activity, that is drug trafficking in violation of 21 U.S.C. §§ 841(a) and 846, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(A)(i),

all in violation of 18 U.S.C. § 1956(h).

Respectfully submitted,

Christopher N. Young
Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me this 16 day of January, 2020

THE HONORABLE ROBERT S. BALLOU
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF VIRGINIA

14